**FILED**
**SEP 16 2002**

Judge Charles R. Norgle, Sr.
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v. ) No. 01 CR 817-1
) Judge Charles R. Norgle, Sr.
JESUS GARCIA )

DOCKETED
SEP 17 2002

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JESUS GARCIA, aka JESUS GARCIA-VASQUEZ and JOSE GARCIA-VASQUEZ, and his attorney, RONALD CLARK, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 01 CR 817-1.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement. By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant JESUS GARCIA and his attorney, RONALD CLARK, have agreed upon the



following:

1. Defendant acknowledges that he has been charged in the indictment in this case with having conspired with co-defendant Jorge Barragan ("Barragan") and with others unknown, to knowingly and intentionally possess with intent to distribute and to distribute a controlled substance, namely in excess of 50 grams of mixtures containing methamphetamine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 846 (Count One); and knowingly and intentionally distributing methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) (Count Two).

2. Defendant has read the charges against him contained in the indictment in this case and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One of the indictment in this case.

5. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty to Count One of the indictment defendant admits the following facts, and admits that these facts establish his guilt beyond a reasonable doubt:

On or about August 28, 2001, defendant JESUS GARCIA ("GARCIA")

conspired with Jorge Barragan ["Barragan"] and with others unknown to knowingly and intentionally possess with intent to distribute and to distribute, a controlled substance, namely in excess of 50 grams of mixtures containing methamphetamine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846.

It was part of the conspiracy that defendant GARCIA and co-defendant Barragan agreed to obtain wholesale quantities of methamphetamine and to sell the methamphetamine to others for profit. Defendant GARCIA negotiated with a Cooperating Source ["CS"] for the sale of approximately one pound of methamphetamine to the CS in exchange for $6,500, for which Barragan was the source of supply for the methamphetamine.

Specifically, on August 28, 2001, it was part of the conspiracy that the CS made arrangements with defendant GARCIA for the sale of one pound of methamphetamine to the CS that day. Later that day, as part of the conspiracy, the CS met with defendant GARCIA and co-defendant Barragan near a bar in Chicago, Illinois, and GARCIA introduced defendant Barragan as his source of supply. During the course of the meeting, the CS met with defendant GARCIA and co-defendant Barragan in the garage area behind the bar. Barragan pulled a bag from his pants pocket, containing approximately one pound of mixtures containing methamphetamine (457.8 grams net weight and containing 87 grams of actual

methamphetamine), and handed it to defendant GARCIA, who in turn handed the bag containing the methamphetamine to the CS.

It was further part of the conspiracy that after determining that the bag contained methamphetamine, the CS re-entered the garage to pay defendant GARCIA the agreed upon price of $6,500 for the methamphetamine. After the CS gave defendant GARCIA the $6500, defendant GARCIA and Barragan split the money and left the garage.

6. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a) The amount of methamphetamine involved in the offense and relevant conduct for which the defendant is accountable was at least 50 grams but less than 150 grams of actual methamphetamine. Therefore, pursuant to Guidelines §2D1.1(c)(4), the base offense level is level 32.

(b) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guidelines §3E1.1(a), a two level reduction in the offense level is appropriate.

(c) Defendant has notified the government timely of his intention to enter a plea of guilty, thereby permitting the

4

government to avoid preparing for trial and permitting the court to allocate its resources efficiently, within the meaning of Guideline §3E1.1(b); an additional one-point reduction in the offense level is therefore appropriate, provided the court determines the offense level to be 16 or greater prior to the operation of Guideline §3E1.1(a).

(d) On June 7, 1999, the defendant was convicted in Converse County, Wyoming, case number CT-9906-009, of Driving Under the Influence and sentenced to six months probation. Pursuant to Guideline § 4A1.1(c) defendant is assigned one criminal history point for this conviction.

(e) On December 22, 1999, the defendant was convicted in the District of Wyoming, case number 99 CR 120, of illegal reentry into the United States after deportation, and was sentenced to time served (135 days) and ordered deported. Pursuant to Guideline § 4A1.1(b) defendant is assigned two criminal history points for this conviction.

(f) On May 13, 2002, the defendant was convicted in the Eastern District of Michigan, case number 01 CR 80782-1, of illegal reentry into the United States after deportation, and was sentenced to ten months incarceration. Pursuant to Guideline § 4A1.1(b) defendant is assigned two criminal history points for this conviction.

(g) Pursuant to Guideline § 4A1.1(d), because defendant committed the instant offense less than two years after release

from imprisonment, defendant is assigned two criminal history points.

(f) Based on the facts known to the government, the defendant's criminal history points equal 7 and the defendant's criminal history is IV.

(g) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8. Defendant understands that the indictment to which he will plead guilty carries a maximum penalty of life in prison and

a maximum fine of $4,000,000. Defendant further understands he is subject to a statutory minimum sentence of 10 years imprisonment. In addition, defendant understands that this charge also carries a term of supervised release of at least five years and up to any number of years, including life, which the court may specify.

9. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on the Count to which he has pled guilty, in addition to any other penalty imposed. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the United States District Court.

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by

removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, and considering each count of the indictment separately, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count of the indictment separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If the defendant desired to do so, he could testify in his own behalf.

11. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he exercised his right to trial.

12. The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction, or the manner in which that sentence was determined, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

13. Defendant understands that the indictment and this Plea are matters of public record and may be disclosed to any party.

14. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters,

9

including all matters in aggravation and mitigation relevant to the issue of sentencing.

15. At the time of sentencing, the government shall recommend that the Court impose a sentence at the low end of the applicable guideline range, or the statutory mandatory minimum sentence, whichever is higher.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the Sentencing Guidelines, may impose the maximum penalties as set forth in paragraph 8 above. The defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

17. After sentence has been imposed on Count One to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count in the indictment as to this defendant.

18. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to

resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

19. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

20. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

21. Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

22. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: September 16, 2002

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
JOHN H. NEWMAN  
Assistant United States Attorney

_____  
JESUS GARCIA  
Defendant

_____  
RONALD CLARK  
Attorney for defendant